IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel CACHE VALLEY ELECTRIC COMPANY, a Utah Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR STAY**<br><br><br>Case No. 2:13-cv-01120-DN<br><br>District Judge David Nuffer |

Defendants XL Group, XL Specialty Insurance Company, XL Reinsurance America, Inc., and Greenwich Insurance Company (collectively "XL Defendants") filed a Motion for Stay.[1] For the reasons set forth below, the Motion for Stay is GRANTED.

## INTRODUCTION

This dispute arises out of work performed by Cache Valley Electric Company ("Cache Valley") in construction of the Utah Data Center located in Camp Williams, Utah (the "Project").[2] The Complaint alleges that the Project is owned by the United States of America, which engaged Balfour Beatty/DPR/BIG-D, a Joint Venture ("BDB") as the general contractor for the Project.[3] It is alleged that BDB entered into a subcontract with Truland Systems

---

[1] Motion by Defendants XL Group, XL Specialty Insurance Company, XL Reinsurance America, Inc., and Greenwich Insurance Company for Stay of Proceedings Pending Resolution of a Related Arbitration Proceeding ("Motion for Stay"), docket no. 46, filed April 15, 2014.

[2] Complaint at 4, ¶15, docket no. 2, filed December 26, 2013.

[3] Id. ¶ 16-17. The Answer of Travelers Casualty and Surety Company of America, Fidelity and Deposit Company of Maryland, Zurich American Insurance Company, Liberty Mutual Insurance Company, Federal Insurance Company, Continental Casualty Company, and Safeco Insurance Company of America ("Answer") asserts that the United States Army Corps of Engineer was the entity who engaged BDB's services. Answer at 3, ¶17, docket no. 28, filed February 12, 2014.

Corporation ("Truland") for certain electrical work, and Truland then entered into a subcontract with Cache Valley to provide and supervise portions of the electrical labor required by the contract between BDB and Truland.[4] Truland entered into separate contracts for other electrical labor and materials for the Project.[5] Cache Valley alleges that BDB and Truland established bonds to secure payment for the labor and materials provided at the Project.[6] Cache Valley alleges it is a beneficiary on each bond.[7]

The Complaint further alleges that Cache Valley has received payment from Truland in the amount of $63,164,547.12, but $5,782,416.20 remains unpaid for work performed by Cache Valley on the Project.[8] Cache Valley sues to recover payment from the BDB and Truland sureties.

### BDB v. Truland Arbitration – Pending at Motion to Stay

Truland's surety, the XL Defendants, filed the Motion for Stay of this lawsuit until the conclusion of related arbitration proceedings initiated against Truland by BDB.[9] BDB filed the arbitration against Truland, and others ("BDB Arbitration").[10] In the BDB Arbitration, Truland claims that serious problems ("Electrical Failures") arose related to the electrical equipment that was installed in the Project, resulting in significant costs of investigation and correction.[11] Truland's sureties, the XL Defendants, claim that completion of the Project was delayed, and the

---

[4] Complaint at 4-5, ¶¶18-19.

[5] Motion for Stay at 4.

[6] Complaint at 5-6, ¶¶26-27.

[7] *Id.*

[8] *Id.* at 5, ¶¶24-25. Subsequent filings by Cache Valley allege this amount is now over $8.3 million. *See* Response of Plaintiff to Second Supplemental Memorandum of XL Defendants at 4, docket no. 98, filed December 2, 2014.

[9] Motion for Stay at 2.

[10] *Id.*; Exhibit A to Motion for Stay, docket no. 46-1, filed April 15, 2014 (noting case was docketed as *Balfour Beatty/DPR/Big-D, a Joint Venture v. Truland Systems Corporation, et al.*, AAA Case No. 77 158 00603 13.).

[11] Motion for Stay at 2.

Government withheld payment from BDB, who in turn withheld payment from Truland, who in turn withheld payment from Cache Valley.[12] The XL Defendants argue that, until the arbitration proceedings are completed, it cannot be determined whether Cache Valley "performed its contractual responsibilities so as to be entitled to payment."[13] This is because, the XL Defendants argue, the arbitration proceedings will center largely on the cause of the Electrical Failures. "If the equipment was defective," the XL Defendants claim, "liability rests with the manufacturer and vendors; if the problems are due to improper handling or installation of the equipment, liability falls on Truland, which would be entitled to indemnification from Cache Valley because Cache Valley was responsible for installing the equipment."[14] The remaining defendants join in the XL Defendants' Motion for Stay.[15]

### Later Filed Truland v. Cache Valley Arbitration – Consolidation

At the time the Motion for Stay was filed, the XL Defendants noted that the "Truland/Cache Valley Subcontract includes an arbitration clause" but that "Cache Valley ha[d] not filed an arbitration demand against Truland" nor had Truland filed at that time an arbitration action against Cache Valley.[16] In supplemental briefing on the Motion for Stay,[17] however, the parties disclosed that an arbitration action was later filed against Cache Valley by Truland ("Truland Arbitration"),[18] and that the BDB Arbitration and the Truland Arbitration are

---

[12] *Id.* at 2-3.

[13] *Id.* at 3.

[14] *Id.*

[15] Motion by Defendants Travelers Casualty and Surety Company of America, Fidelity and Deposit Company of Maryland, Zurich American Insurance, Liberty Mutual Insurance Company, Federal Insurance Company, Continental Casualty Company, and Safeco Insurance Company of America for Joinder of Motion for Stay of Proceedings Pending Resolution of a Related Arbitration Proceeding, docket no. 47, filed April 18, 2014.

[16] Motion for Stay at 6.

[17] Docket nos. 96, 98, and 99.

[18] *Truland Systems Corporation v. Cache Valley Electric Company*, AAA Case No. 011400004746.

consolidated before the American Arbitration Association ("AAA") on November 25, 2014 ("Consolidated Arbitration").[19]

## DISCUSSION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[20] The Tenth Circuit has recognized that "under the FAA [Federal Arbitration Act], a court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding."[21] "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[22]

Even in cases where claims are brought under the Miller Act, the presumption in favor of arbitration still applies if there is a valid arbitration agreement: "The Miller Act does not prohibit arbitration before resort to the courts where, as here, the subcontractor [Cache Valley] and contractor [Truland] have previously agreed to arbitrate disputes."[23] "Plaintiff is not entitled to proceed without first complying with the arbitration provision of the subcontract."[24]

There is no dispute that the Truland/Cache Valley subcontract contains an arbitration clause.[25] Likewise, there is no argument that the arbitration clause is unenforceable or invalid. Therefore, a stay is appropriate.

---

[19] Notice of Rule 7 Arbitrator Order, docket no. 97, filed November 26, 2014.

[20] *Landis, et al. v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

[21] *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000) (internal quotation marks and citation omitted).

[22] *Id.*

[23] *U.S. ex rel. Humbarger v. Law Co., Inc.*, No. 01-4156-SAC, 2002 WL 436772 at *4 (D.Kan. Feb. 20, 2002) (unpublished); *see also P1 Group Inc, v. Tepa EC, LLC*, No. 12-2412-RDR, 2012 WL 4667062 at *3 (D.Kan. Oct. 3, 2012) (unpublished) (granting stay of Miller Act claims pending arbitration); *U.S. ex rel TGK Enterprises, Inc.*, 978 F.Supp.2d 540 (E.D.N.C. 2013) (same); *U.S. v. Consigli Const. Co., Inc.*, 873 F.Supp.2d (D.Me. 2012) (same); *U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.*, 349 F.Supp.2d 934 (D.Md. 2004) (same).

[24] *Id.*

[25] Truland/Cache Valley Subcontract, Exhibit A to Complaint at ¶ 15, docket no. 2-1, filed December 26, 2013.

That Cache Valley has sued the *sureties* (BDB and Truland sureties); not the *party* with whom Cache Valley subcontracted (Truland) does not change the result. Cache Valley argues that the purpose of the Miller Act will be violated if arbitration is compelled because "the purpose of the payment bond required under the Miller Act is to 'shift the ultimate risk of nonpayment from workmen and suppliers to the surety.'"[26] Cache Valley argues that requiring arbitration means prompt payment is not being provided as required by the Miller Act.[27]

However, this same argument was rejected in *U.S. ex rel. Humbarger v. Law Co., Inc.* "[T]he fact that this court cannot require [a surety] to participate in arbitration is no reason not to stay the case."[28] In *Humbarger*, the general contractor—The Law Company—entered into a written subcontract with the subcontractor—Mark Humbarger—to install flooring on a project for the U.S. Army.[29] The subcontract contained an arbitration provision.[30] When the subcontractor was not paid, it brought suit against the general contractor and the general contractor's surety, USF&G.[31] The subcontractor argued it was not required to arbitrate the dispute because it had brought a "Miller Act claim which can be waived only expressly," and the subcontractor had not expressly waived it.[32] After concluding that the action as to the general contractor could be stayed pending arbitration,[33] the court addressed the question of whether the action could be stayed as to the surety, USF&G.[34] The court held that "the contractor's surety is

---

[26] *Id.* at 9-10.

[27] *Id.*

[28] *Humbarger*, 2002 WL 436772 at *4; *see also* *P1 Group*, 2012 WL 4667062 at *3 (following *Humbarger* in allowing stay of case pending arbitration even though surety was not a party to the arbitration).

[29] *Humbarger*, 2002 WL 436772 at *1.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.* at *2-*3.

[34] *Id.* at *4.

not bound by an arbitration agreement between the subcontractor and the general contractor[,]"[35] but nevertheless, the action against the surety would be stayed while the parties resolved the matter in arbitration.[36] So it is in this case. Even though BDB's and Truland's sureties are not parties to the Consolidated Arbitration and are not technically bound by the Truland/Cache Valley arbitration clause, staying this case is appropriate while the arbitration determines important issues.

When deciding whether to exercise its inherent power to stay cases, a district court considers three factors: "(1) whether the stay would promote judicial economy; (2) whether the stay would avoid possible inconsistent results; and (3) whether the stay would not work undue hardship or prejudice against the plaintiff."[37] Each of these factors is answered in the affirmative here.[38]

First, a stay will promote judicial economy because it will avoid the parties and the court handling the same issues that will be considered in the Consolidated Arbitration. Second, a stay will avoid possible inconsistent results. Cache Valley's claim in this case is that Truland's sureties must pay the outstanding amounts because the Miller Act requires it. Truland's sureties argue that they do not have to pay until it is determined what amounts are "justly due." And that

---

[35] *Id.*

[36] *Id.*

[37] *Sparks v. Saxon*, No. 2:09-cv-00151-DAK, 2009 WL 2886029 at *5 (D.Utah Sep. 3, 2009) (unpublished) (internal quotation marks and citation omitted).

[38] Cache Valley's counsel asserts that there are two additional factors to consider when deciding a motion to stay: (1) whether a grant of the stay request would simplify the issues before the Court; and (2) the stage of the litigation." Opposition Memo at 4 (citing *Lifetime Products, Inc. v. Russell Brands, LLC*, No. 1:12-cv-00026-DN, 2013 U.S. Dist. Lexis 31579, *6 (D.Utah March 5, 2013). However, the *Lifetime Products* case cited by Cache Valley is a patent case where the motion for stay was premised on a *inter partes* reexamination before the USPTO—not upon an arbitration provision in the parties' contract. Therefore, it is not factually similar to this case. But even if the additional two factors are considered here, they support a stay because (1) staying this case and allowing the Consolidated Arbitration to resolve central issues will simplify the issues before this court; and (2) this case is still at an early stage of litigation. No discovery has been conducted since initial disclosures and other important discovery dates have been stalled in anticipation of a decision on the Motion for Stay.

determination can be made only after the cause of the Electrical Failures is determined. Since the cause of the Electrical Failures is a central issue in the Consolidated Arbitration, a stay of this case avoids the possibility of inconsistent results.

Finally, a stay does not work *undue* hardship or prejudice against Cache Valley. Cache Valley may continue to experience financial hardship during this stay. But Cache Valley is not without recourse. It has the ability to protect its interests as a party in the Consolidated Arbitration and, later, if necessary, may return to this court for a resolution of remaining matters against the BDB and Truland sureties. Remedies such as monetary damages and interest will compensate Cache Valley in the event the arbitrators resolve the dispute in Cache Valley's favor. In balancing Cache Valley's potential hardship against the other factors at issue (i.e., Cache Valley's agreement with Truland to arbitrate and the tremendous potential for confusion and inefficiency), it becomes clear that a stay in this case is the most prudent course of action. Accordingly, the Motion for Stay is granted.

## ORDER

The XL Defendants' Motion for Stay[39] is GRANTED. This case is STAYED pending completion of the parties' Consolidated Arbitration. At that completion and every four months until the completion, the parties shall file a report on the status of the Consolidated Arbitration.

Dated January 13, 2015.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[39] Motion by Defendants XL Group, XL Specialty Insurance Company, XL Reinsurance America, Inc., and Greenwich Insurance Company for Stay of Proceedings Pending Resolution of a Related Arbitration Proceeding, docket no. 46, filed April 15, 2014.